713 So.2d 697 (1998)
STATE of Louisiana
v.
Jerry SCHWEHM.
No. 97 KA 1544.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
Rehearing Denied June 24, 1998.
*699 Terry M. Boudreaux, Gretna, Walter P. Reed, District Attorney, Covington, for Appellee State.
Paul R. Baier, Baton Rouge, Lloyd Raner Walters, Slidell, for Defendant/Appellant Jerry Schwehm.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
Defendant, Jerry Schwehm, was charged by grand jury indictment with two counts of malfeasance in office, one count of unauthorized use of movables, and one count of theft of money in excess of $500.00, violations of LSA-R.S. 14:134, 14:68 and 14:67, respectively. The two malfeasance in office charges were severed and tried separately from the other counts.[2] The jury returned verdicts finding defendant guilty as charged on both counts of malfeasance. The trial court sentenced defendant to five years at hard labor on each count, concurrent, but suspended the last two years and placed defendant on probation for five years, with special conditions. The court also imposed fines of $1,500.00 on each count. Defendant has now appealed, raising seven assignments of error. However, assignment of error number four was specifically abandoned.

FACTS
On December 13, 1990, defendant, a practicing attorney, took the oath of office as Justice of the Peace for Ward 8 of St. Tammany Parish. In January of 1994, the office of the legislative auditor conducted an audit of defendant's office. The investigation revealed that, although defendant had imposed and collected litter fines, as of the time of the investigation, he had not remitted any portion of the fines to St. Tammany Parish. Subsequently, defendant was indicted for two counts of malfeasance in office, which were alleged to have occurred between January 1, 1991 and December 31, 1993. Count one alleged that defendant failed to remit litter fines he collected to St. Tammany Parish as required by statute and parish ordinance. Count three alleged that he collected fees and charged persons for the lodging and filing of peace bonds with the Justice of the Peace's Court.

ASSIGNMENTS OF ERROR NUMBERS 1 & 3
In assignments of error numbers one and three, defendant argues the trial court erred in denying his Motion for Post-Verdict Judgment of Acquittal and Motion for New Trial because the verdicts were contrary to the law and the evidence and was insufficient to support the convictions.
The standard of review for sufficiency of the evidence is whether or not, viewing the evidence in the light most favorable to the *700 prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. LSA-C.Cr.P. art. 821; State v. Thomas, 589 So.2d 555, 569 (La.App. 1st Cir.1991). The Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
LSA-R.S. 14:134 provides that malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
In order to prove a violation of LSA-R.S. 14:134, the state must prove the existence of an affirmative duty delineated by statute or law upon the defendant as a public officer and that the defendant intentionally performed that duty in an unlawful manner. State v. Davis, 93-0599, p. 2 (La.4/11/94); 634 So.2d 1168, 1170. "The duty must be expressly imposed by law upon the official because the official is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will subject him to criminal charges." State v. Perez, 464 So.2d 737, 741 (La.1985).

Count 1: Failure to Remit Litter Fines
In count one of the indictment, defendant is charged with committing malfeasance in office by collecting and failing to remit the sum of $6,025.00 in litter fines to the St. Tammany Parish Police Jury. At trial, the state argued the source of defendant's duty to remit the litter fines to the parish was St. Tammany Parish ordinance Police Jury Series No. 89-1148 and LSA-R.S. 25:1112 (redesignated as LSA-R.S. 30:2532 by 1995 La. Acts No. 1019, § 9). As quoted in defendant's brief, ordinance 89-1148 requires that all fines collected by a justice of the peace pursuant to LSA-R.S. 25:1111 et seq. be paid to St. Tammany Parish, which shall then reimburse fifty percent of the fines collected to the justice of the peace for the time spent and expenses incurred in collecting the fines.[3] LSA-R.S. 25:1112A also deals with the disposition of litter fines. From the time that defendant took office until August 21, 1992, this provision provided that all litter fines collected were to be paid to the local governing authority where the offense occurred. LSA-R.S. 25:1112A was amended by 1992 La. Acts No. 362 to provide that the litter fines collected were payable as follows: fifteen percent to the state treasurer; fifteen percent to the law enforcement agency issuing the citation; fifteen percent to the district attorney, city attorney or prosecuting authority; and, fifty-five percent to the local governing authority in which the offense was committed.[4] In 1993, LSA-R.S. 25:1112A *701 was again amended by 1993 La. Acts No. 579, § 3 to provide that litter fines were to be paid to the local governing authority of the parish in which the offense was committed.
On appeal, defendant makes numerous arguments questioning the existence of his duty, as justice of the peace, to remit all litter fines he collected to St. Tammany Parish. He further argues that, even assuming an obligation to do so existed, the state failed to prove remittance of the litter fines was overdue, because neither the local ordinance nor the applicable state statutes specified a time that the fines must be remitted. Defendant proposes that a reasonable time for performance of this obligation could have been at the end of his term as justice of the peace, when called upon to remit the funds by the local governing authority to which they were due, or at a time agreed to by the parties. The state dismisses this argument as unreasonable and argues defendant's obligation to perform his duties as a public official in good faith included the duty to make a "reasonably prompt remittance" of the litter fines. The state additionally argues that the evidence presented at trial of defendant "[p]ocketing these funds evinces the intent to never turn them over and renders nugatory any claim that they need not be turned over because the statute does not expressly provide a time."
Upon examination of each of the provisions relied upon by the state, we are constrained to conclude that defendant's argument has merit.[5] None of these provisions provide a time for performance of any duty they may impose upon a justice of the peace to pay the litter fines to the appropriate party. Although we believe this omission is probably due to an oversight, the omission is a matter for the Legislature to address rather than this court. Before a public official may be found guilty of malfeasance in office, an affirmative duty must be delineated by law so that he will know exactly what conduct will subject him to criminal charges. State v. Perez, 464 So.2d at 741. In this case, even assuming defendant had a duty to remit some or all of the litter fines to the parish, no time for the performance of this duty was provided by law. This fact makes it extremely difficult, if not impossible, to determine at what point a failure to remit litter fines becomes criminal in nature. While common sense may suggest, as argued by the state, that a requirement of reasonable promptness is implicit in the duty to remit, we do not believe such uncertainty is acceptable in the criminal arena. A public official is entitled to know exactly what conduct will expose him to criminal penalties. State v. Perez, 464 So.2d at 741. Accordingly, since no time for the performance of the duty was delineated by law, we find that defendant's failure to remit the litter fines to the parish does not constitute the criminal offense of malfeasance in office.
In reaching this conclusion, we do not suggest that defendant's conduct was proper or that he is entitled to retain the litter fines. We have concluded merely that the conduct in question does not constitute the criminal offense of malfeasance. In this regard, we note that the malfeasance statute was not designed to punish all forms of misconduct in office. Some forms of misconduct by public officials are subject to other sanctions. State v. Perez, 464 So.2d at 746. For example, a justice of the peace is considered a judge within the contemplation of the law and, therefore, may be disciplined or removed for misconduct by proceedings before the Judiciary *702 Commission. See LSA-Const. art. V, § 25(C); see also Redwine v. State, 94-0160, p. 3 (La.App. 1st Cir. 12/22/94); 649 So.2d 61, 63.
For the reasons stated, the trial court erred in denying defendant's motion for post-verdict judgment of acquittal with respect to count one of the indictment. We hereby reverse the ruling of the trial court and grant that motion with respect to count one, reversing that conviction and sentence for malfeasance in office.

Count Three: Charging For Filing of Peace Bonds
In count three of the indictment, defendant was accused of malfeasance in office on the grounds that he charged and collected fees for the "lodging and filing of peace bonds." LSA-R.S. 13:2589A provides that justices of the peace shall receive no fee in peace bond cases.
On appeal, defendant argues the evidence was insufficient to sustain his conviction on this count because the state did not establish that any peace bonds actually were issued or forfeited. In particular, he notes the state failed to introduce any peace bond issued by him. He further argues that, although individuals may have come into his office requesting peace bonds, what they actually received were restraining orders or, in some cases, a judgment.
At trial, Scott Carlton, an investigative auditor with the legislative auditor's office, testified that an examination of the records of defendant's checking account revealed the deposit of seventy-three checks for peace bond charges, as indicated by the notation "P.B" on the deposit slips. There was testimony that this notation was an abbreviation for peace bond. The total of the deposits in question was $4,060.00. In defendant's computer records, which were posted by defendant himself, the words "peace bond" were spelled out next to the deposits. Ernest Levy, a senior investigative auditor who also participated in the investigation of defendant's office, testified the majority of the charges were for $60.00, although some were for $25.00.
In a taped interview with Carlton and Levy, defendant denied he charged anyone for peace bonds. However, he later stated he initially charged $25.00 for peace bonds when he first took office, believing he was entitled to do so under LSA-C.Cr.P. art. 29.[6] After he attended a seminar and learned such fees were impermissible, he stopped charging any fee for peace bonds. He indicated that, in some of the cases in which people requested peace bonds from him, he issued restraining orders rather than peace bonds. He stated that those cases in which there was a charge for a peace bond probably were instances where his constable, Charlie Edwards, collected the fees and forged defendant's name. Defendant claimed he did not realize Edwards was charging for peace bonds until he began his own internal audit in September of 1993. He further indicated that, although he posted deposits on his computer designating them as charges for peace bonds, he was merely copying the notations made by his staff on the deposit slips, and it did not occur to him to question it.
At trial, the state also introduced a copy of a form which was utilized in defendant's office by individuals seeking his services as a justice of the peace. The form contained spaces to indicate the service sought, including peace bonds, and indicated the filing fee for each procedure. The filing fee listed for peace bonds was $60.00. Belinda Durr, a former secretary of defendant, testified defendant himself made up the forms used in the office and set the fees for all services. Maureen Perry, another former employee of defendant, also testified defendant set the fees for services and told her to charge $60.00 for peace bonds. Both Ms. Durr and Ms. Perry indicated they collected fees for peace bonds during the time they worked for defendant.
Based on our review of the record, we believe the evidence was sufficient to establish *703 that defendant was responsible for charging and collecting filing fees from individuals who came to the justice of the peace court requesting peace bonds. The guilty verdict returned by the jury indicates it rejected defendant's claim that the filing fees were charged by his constable without his knowledge, and accepted the testimony of the state witnesses indicating defendant instructed his staff to charge a filing fee for peace bond requests. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Thomas, 589 So.2d at 570. Further, when defendant took his office of office as a justice of the peace, he swore "to support ... the Constitution and Laws of this State" and to "faithfully and impartially discharge and perform all the duties incumbent on me [as a justice of the peace]." By intentionally violating the prohibition of LSA-C.Cr.P. art. 29A against charging fees for peace bonds, defendant failed to perform the duty imposed upon him by his oath of office to support the laws of this State. This failure constituted malfeasance in office. See State v. Perez, 464 So.2d at 742.
Therefore, after a careful review of the record, we believe a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the state proved beyond a reasonable doubt that defendant committed the offense of malfeasance in office. Accordingly, the trial court correctly denied defendant's motion for post-verdict judgment of acquittal with respect to count three of the indictment.

ASSIGNMENT OF ERROR NO. 2
In assignment of error number two, defendant argues the trial court erred in denying his Motion In Arrest of Judgment, which was based on the contention that the offenses charged were not punishable under a valid statute. See LSA-C.Cr.P. art. 859(2). Specifically, he complains LSA-R.S. 14:134 does not inform a defendant charged with malfeasance of the underlying duty he is charged with either failing to perform or performing in an unlawful manner.
Statutes are presumed valid and their constitutionality should be upheld whenever possible. Broad language in itself does not mean a statute is vague, particularly where it is clear that the legislature intended to make criminal all acts of a certain kind. State v. Hart, 96-0599, p. 2 (La.1/14/97); 687 So.2d 94, 95. It would be impossible for LSA-R.S. 14:134 to enumerate each duty required of every public official which could subject him to a charge of malfeasance if he fails to perform that duty or performs it unlawfully. See State v. Coker, 625 So.2d 190, 195 (La.App. 3rd Cir.), writ denied, 624 So.2d 1204 (La.1993). However, we believe La. R.S. 14:134 adequately informs public officials of the conduct prohibited in that it gives notice that they will be subject to a charge of malfeasance for intentionally refusing to perform any duty lawfully required of them or performing that duty in an unlawful manner.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5
In this assignment of error, defendant contends the trial court erred in denying his motion for mistrial following a reference by the prosecutor to defendant's failure to testify.
During closing arguments, the prosecutor made the following remarks in addressing the issue of where the litter violations in question occurred:
The only testimony was of Belinda Durr [defendant's former secretary] who said that when [defendant] and Mr. Edwards [defendant's constable] went out, they went out to rural areas, rural areas. There's only one person that can tell us whether it was in Slidell or Pearl River, but here's the bottom line, folks, on litter fines.
Defendant objected to the prosecutor's remarks on the grounds that they constituted a direct reference to defendant's failure to testify. The prosecutor responded to the objection by offering to mention Charles Edwards again. Without expressly ruling on defendant's objection, the trial court stated to the prosecutor:
You come (sic) mighty close right there. I'll instruct the jury to disregard that last *704 remark you made. Something like that happens again....
Initially, we note that the record does not reflect defendant requested a mistrial or an admonition. The admonition that was given by the trial court was unsolicited. When an objection is sustained, a defendant cannot complain on appeal of the alleged error unless he requested and was denied either an admonition to disregard or a mistrial. State v. Michel, 422 So.2d 1115, 1121 (La.1982); State v. Hilburn, 512 So.2d 497, 501 (La.App. 1st Cir.), writ denied, 515 So.2d 444 (La.1987). However, since the record in this case is not sufficiently clear on whether the trial judge actually sustained defendant's objection, we do not find defendant's failure to request a mistrial precludes review of this issue on appeal. See State v. Michel, 422 So.2d at 1121.
LSA-C.Cr.P. art. 770(3) provides for a mandatory mistrial if the prosecutor refers directly or indirectly to the failure of the defendant to testify in his own defense. When the prosecutor makes a direct reference to the defendant's failure to take the stand, a reviewing court will not attempt to determine the effect that the remark had on the jury. However, where the reference to the defendant's failure to testify is indirect, the reviewing court will inquire into the remark's intended effect upon the jury. State v. Thornton, 94-1470, p. 11 (La.App. 1st Cir. 10/6/95); 671 So.2d 481, 487-88. In cases where the prosecutor simply emphasized that the state's evidence was unrebutted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so, the prosecutor's argument does not constitute an indirect reference to the defendant's failure to testify. See State v. Thornton, 671 So.2d at 488.
In the present case, immediately before remarking that only one person could say where the litter violations occurred, the prosecutor had referred to both defendant and his constable, Charles Edwards, going out to rural areas [looking for litter violations]. Thus, the comment that only one person could say where the violations occurred could have been a reference to Charles Edwards, as well as to defendant. Since another person besides defendant could have testified as to where the litter violations occurred, the prosecutor's remark did not constitute a comment, direct or indirect, on defendant's failure to testify. See State v. Thornton, 671 So.2d at 488. The remark did not focus the jury's attention on defendant's failure to testify.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 6
In this assignment of error, defendant argues the trial court erred in denying his motion for new trial based on his claim of ineffective assistance of counsel.
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
Thus, to prevail on a claim of ineffective assistance, a defendant must show both that counsel's performance was deficient and that counsel's error prejudiced the defense. State v. Sanders, 93-0001, p. 25 (La.11/30/94); 648 So.2d 1272, 1291. In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland v. Washington, 466 U.S. at 688, 104 S.Ct. at 2065. "The defendant must show *705 that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068.
In this case, defendant's claim of ineffective assistance of counsel is predicated on several allegations of deficiencies in his trial counsels' performance.[7] In particular, defendant complains that counsel rested without allowing him to testify or calling any other defense witnesses. At the hearing held on his motion for new trial, defendant testified counsel never discussed trial strategy with him and he was totally stunned when they failed to call him to the stand or to present any defense. According to defendant, had he testified at trial, he could have explained his mental state at the time in question due to the fact that his wife was dying of cancer at that time. He also stated he would have explained what was going on in his office with his constable, who he claimed in his taped interview with investigators was responsible for charging peace bond fees without defendant's knowledge. Defendant also alleged there were other defense witnesses his attorneys could have called to testify on his behalf regarding the peace bond issue. However, with the exception of Dr. John Galloway, defendant did not present the testimony of any of these witnesses at the motion hearing. Dr. Galloway was accepted at the hearing as an expert sociologist and social worker. He testified he counseled defendant throughout his wife's illness, including the time of the alleged malfeasance. According to Dr. Galloway, during this time, defendant was depressed, had difficulty concentrating, was confused and disorganized, and was unable to handle his affairs without support. Defendant also complains that his attorneys were improperly prepared for trial in that they did not interview his former secretaries Belinda Durr and Marlene Perry, both of whom gave damaging testimony against him, prior to trial.
Both of defendant's trial counsel, Brice Jones and Marion Farmer, testified at the hearing on defendant's motion. The substance of their testimony was that, although they did not personally talk to several potential witness, they knew through discovery or otherwise what these witness would testify to, and the trial testimony of those witnesses contained no surprises. They also testified that the decision for defendant not to testify, as well as the decision not to put on any defense witnesses, was made after discussion among themselves and defendant. Both counsel testified they did not believe defendant would make a good witness, because he had difficulty staying focused and a tendency to wander in his statements. Mr. Farmer testified he was concerned that this tendency might cause defendant to say something prejudicial to his case. Mr. Farmer was particularly concerned that defendant would have difficulty explaining certain matters on cross-examination.
In concluding that defendant failed to prove his claim of ineffective assistance of counsel, the trial court accepted the testimony of Mr. Jones and Mr. Farmer that the decision to rest without calling any witnesses was a "considered decision" between defendant and his attorneys. The court specifically rejected defendant's testimony that "he did not agree with the decision of his counsel to rest the case and was shocked when Mr. Jones rested...." In extensive written reasons for judgment, the trial court further stated:
Defendant also complained that his counsel did not call character witnesses such as Dr. John Galloway, who would have testified that defendant was grieving the illness and subsequent death of his wife and was suffering from depression at the time of the alleged malfeasance. These witnesses did not have information regarding the merits of the case. They *706 could not testify to the defendant's reasons for not remitting the litter fines or for accepting money for the filing of peace bonds.
The defendant's main complaint is that he wanted to testify and counsel did not give him the opportunity. At the motion hearing he presented Mr. Ralph Whalen who was accepted by the court as an expert witness in criminal law. Mr. Whalen opined that in cases of malfeasance, the public official should be called to testify unless the defense has a compelling reason not to call him. Mr. Jones and Mr. Farmer both testified that they felt such a reason existed because the defendant would not make a good witness. When discussing the case with him, they found it very difficult to keep defendant on point and get responsive answers. He was too talkative and tended to make statements which were possibly harmful. Both counsel felt they had effectively cross examined the State's witnesses and they felt they had an ideal jury. They felt that the tempo of trial was with them and they only needed a strong closing argument to win the case. The defendant agreed with them and all three made the decision to rest without calling witnesses. Both counsel clearly state that defendant supported the decision to rest the case and did not doubt the decision until the verdict came back.
The Court finds that trial counsel spent many hours working on the defense of this case and vigorously argued pretrial motions. Though they may not have questioned all possible witnesses before trial, they were fully aware of their possible testimony. Counsel did not feel there were any material fact witnesses who would be helpful to the defense including the defendant himself. The defendant did not bring any witnesses to the motion hearing who could have offered evidence at trial to exonerate him. Without material fact witnesses to support defendant, the decision not to call character witnesses or the defendant is a trial strategy which cannot be questioned in hindsight. The failure of a trial strategy does not necessarily mean that counsel was ineffective.
After review of the evidence and testimony produced at the motion hearing, the Court finds defendant has failed to prove his trial counsels' performances were deficient or that he was prejudiced by these deficiencies. The defendant has failed to prove either part of the two prong test for ineffective counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court further finds that no evidence was produced on the other grounds argued in the motion.
Based on our review of the entire record, we find no error in the ruling of the trial court rejecting defendant's claim of ineffective assistance of counsel. The record indicates the decision for defendant not to testify was a strategic decision based on a weighing of the potential risks against the possible benefits. The decision to call or not to call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel. State v. Folse, 623 So.2d 59, 71 (La.App. 1st Cir.1993). Furthermore, regarding the allegation that there were other possible defense witnesses who could have been called to testify, defendant failed to introduce sufficient evidence at the motion hearing to substantiate his claim that trial counsel were ineffective in not calling any of these witnesses. Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. See State v. Folse, 623 So.2d at 71. Defendant has failed to establish that he was prejudiced by the deficient performance of his trial counsel.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 7
In this assignment of error, defendant contends the sentences imposed by the trial court were excessive.
First, we note that, having reversed defendant's conviction on count one herein, we need only consider defendant's argument *707 with respect to the sentence imposed on count three, i.e., malfeasance in office based on charging fees for peace bonds. For this conviction, defendant was exposed to a possible sentence of not more than five years imprisonment, with or without hard labor, or a fine of not more than $5000.00, or both. LSA-R.S. 14:134. He received a sentence of five years at hard labor and a fine of $1,500.00. The last two years of the sentence were suspended and defendant was placed on probation for five years following his release, with special conditions, including the payment of restitution to the victims.
A trial court has wide, although not unbridled, discretion in imposing a sentence within statutory limits. State v. Trahan, 93-1116, p. 25 (La.App. 1st Cir. 5/20/94); 637 So.2d 694, 708. Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks the sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La.App. 1st Cir. 5/5/95); 655 So.2d 448, 454. This Court has previously indicated that maximum sentences may be imposed only for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. State v. Price, 95-0997, pp. 6-7 (La.App. 1st Cir. 6/28/96); 677 So.2d 705, 709. The sentence imposed by the trial court will not be set aside absent a showing of manifest abuse of the trial court's wide discretion. State v. Andrews, 655 So.2d at 454.
On appeal, defendant argues the five-year sentence imposed was excessive because he was a first offender with no criminal record, no victim complained, and he tendered a check (dated April 15, 1994) for over $4,000.00 to St. Tammany Parish for the payment of litter fines. He also complains that the trial court failed to take into consideration the favorable testimony of several witnesses at the sentencing hearing, as well as favorable comments in the presentence investigation report.
The record reflects the trial court did in fact consider the presentence investigation report, which recommended that defendant receive a sentence of incarceration rather than a suspended sentence. In sentencing defendant, the trial court stated that a lesser sentence would deprecate the seriousness of defendant's crime. In particular, the court emphasized the fact that defendant's conduct "betrayed the public trust." The court further observed that defendant's actions resulted in economic loss to the individual victims who were charged filing fees for peace bonds.
In addition to the sentencing reasons stated by the trial court, the record indicates defendant expressed no remorse and failed to accept responsibility for his actions. In fact, defendant attempted to blame all wrongdoing on his staff, particularly his constable. We also note defendant was only charged with one count of malfeasance as a result of charging filing fees for peace bonds, although the conduct in question occurred repeatedly over a period of several years. Defendant could have been charged with multiple counts of malfeasance in office based on this conduct, greatly enhancing his potential sentencing exposure. Additionally, this conduct involved individuals who came to defendant, an elected public official, for assistance during times of personal difficulty. Given the circumstances, we find defendant was among the worst type of offender within the class of malfeasance offenders. The record supports the sentence imposed.
However, we note patent error in the requirement of restitution imposed as a special condition for the suspension of the last two years of defendant's sentence. In imposing this condition, the trial court stated that defendant was to "make full restitution to all of the affected victims in this case." The court did not specify the victims or the amount of restitution to be paid to them. When a trial court orders restitution without stating the specific amount of the restitution *708 to be paid, the sentence is defective. See LSA-C.Cr.P. art. 895.1A; State v. Wilson, 613 So.2d 234, 240 (La.App. 1st Cir.1992), writ denied, 93-0533 (La.3/25/94); 635 So.2d 238. Accordingly, although we affirm the sentence, we vacate the condition of restitution and remand this matter to the trial court for a determination of the specific amount of restitution to be paid by defendant to each victim. See State v. Wilson, 613 So.2d at 240.
CONVICTION AND SENTENCE REVERSED FOR MALFEASANCE IN OFFICE ON COUNT ONE (LITTER FINES); CONVICTION AFFIRMED FOR MALFEASANCE IN OFFICE ON COUNT 3 (PEACE BONDS); AND, SENTENCE, AS AMENDED, AFFIRMED FOR MALFEASANCE IN OFFICE ON COUNT 3 (PEACE BONDS); CASE REMANDED TO THE TRIAL COURT WITH ORDER.
REMY CHIASSON, J. Pro Tem., concurs in part and dissents in part with reasons.
REMY CHIASSON, Judge Pro Tem., dissenting with reasons.
I respectively dissent from the portion of the majority opinion finding sufficient evidence to convict the defendant of count three of malfeasance in office for collecting fees for the filing of peace bonds.
I find that the evidence presented was insufficient to establish that defendant intentionally received fees in peace bond cases in violation of La. R.S. 13:2589(A). Although La. R.S. 13:2589(A) prohibits the receipt of fees in peace bond cases, La.Code Crim. P. art. 29(B) requires an applicant for a peace bond to pay advanced court costs of $15.00.[1] When these two provisions are considered in pari materia, it appears that, while a justice of the peace may not receive a fee in peace bond cases, he may receive payments of court costs.[2] Moreover, while article 29(B) limits the payment of advanced court costs for each defendant summoned to $15.00, it does not impose a limitation on the total amount of court costs which can be imposed. Neither La. R.S. 13:2589(A) nor La.Code Crim. P. art. 29(B) defines the terms "fees" or "court costs".
In order to be guilty of malfeasance in office, a public official must intentionally perform or fail to perform an affirmative duty delineated by statute or law. State v. Davis, 93-0599, p. 2, (La.4/11/95); 634 So.2d 1168, 1170. Before being subject to a charge of malfeasance in office, a public official is entitled to know exactly what conduct will subject him to criminal charges. State v. Perez, 464 So.2d 737, 741 (La.1985). In the present case, defendant indicated in his statement to investigators that he believed the charges for peace bonds which he imposed were authorized under La.Code Crim. P. art. 29(B). I find that, when the prohibition of La. R.S. 13:2589(A) against receiving fees is considered in light of the authorization to collect court costs under La.Code Crim. P. art. 29(B), sufficient ambiguity is created so as to make it impossible to conclude that defendant violated an affirmative duty not to collect court costs from applicants for peace bonds, even when the amount thereof exceeded $15.00. The state has not established that the charges collected by defendant were not valid payments for court costs. In this respect, I note that the intake form utilized in defendant's office referred to the charge for peace bonds as a "filing fee", which is generally considered to be a court cost. Given the circumstances, particularly defendant's stated reliance on the authority of La.Code Crim. P. art. 29, I conclude the evidence was insufficient to prove beyond a reasonable doubt that defendant intentionally received fees for peace bonds in violation of La. R.S. 13:2589(A).
*709 Furthermore, I also find merit in defendant's contention that the evidence is insufficient to establish charges were collected in "peace bond cases." In particular, defendant notes the state failed to present any peace bond issued by him. He further argues that, although individuals may have requested peace bonds from him, what they actually received were restraining orders or, in some cases, a judgment.[3]See La.Code Crim. P. art. 26 et seq. The evidence bears this out, as no peace bonds were introduced by the state.[4] Without proof that a peace bond was actually issued I believe that the state's evidence was insufficient to establish charges were imposed in peace bond cases.
Based on the evidence presented I do not believe a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the state proved beyond a reasonable doubt that defendant committed the offense of malfeasance in office by collecting fees in peace bonds cases. Accordingly, I would reverse the trial court conviction as to count three of the indictment.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record does not reveal the disposition of the severed charges.
[3] Although defendant quotes what purports to be the substance of ordinance 89-1148 in brief, he also argues this ordinance should not be considered by this Court because a certified copy of the ordinance was never introduced into evidence. See LSA-C.E. art. 202; LSA-R.S. 13:3712. However, because we dispose of defendant's assignment of error with respect to count one on other grounds, we do not reach this issue.
[4] 1992 La. Acts No. 361 was passed during the same legislative session. Act 361 repealed LSA-R.S. 25:1112A and amended LSA-R.S. 25:1112B to provide that:

All other monies received under the provisions of this Part shall be paid into the state treasury on or before the twenty-fifth day of each month following their collection....
Under this version of LSA-R.S. 25:1112B, justices of the peace would have had a duty to remit litter fines within a specific time period (albeit to the state treasury rather than the parish police jury). However, this act never took effect since it conflicted with Act 362, which was a later expression of the legislative will. Act 361 received final legislative approval on June 4, 1992, whereas Act 362 received final approval four days later on June 8, 1992. When two acts in irreconcilable conflict with one another are passed in the same legislative session, the act enacted last will prevail. State in Interest of Sapia, 397 So.2d 469, 473 (La.1981); State in Interest of Wright, 408 So.2d 1123, 1124 (La.App. 1st Cir.1981).
[5] On appeal, the state also argues that LSA-Const. art. VII, § 14, is an additional source of defendant's duty to turn over the litter fines collected to the St. Tammany Parish Police Jury. This provision states, in pertinent part, that public funds "shall not be loaned, pledged, or donated to or for any person...." Irrespective of any other duty this provision may impose, we note that it does not impose an affirmative duty upon defendant to remit litter fines to the St. Tammany Parish Police Jury, which is the basis of the malfeasance in office charge on count one.
[6] LSA-C.Cr.P. art. 29B provides, in pertinent part, that: "The applicant for a peace bond shall pay as advanced court costs a fee of fifteen dollars for each defendant summoned to a hearing."
[7] In this assignment of error, we will only consider those allegations which are relevant to defendant's conviction on count three of the indictment (malfeasance in office based on charging fees for peace bonds). Defendant also makes numerous allegations of deficient performance by his trial counsel which are pertinent only to his conviction on count one (malfeasance in office based on the failure to remit litter fines). The reversal of that conviction renders consideration of these allegations unnecessary herein.
[1] La. Acts 1979, No. 445, § 1 deleted the language "No fees or costs shall be taxed in connection with the hearing" and added paragraphs B and C.
[2] Laws on the same subject matter must be construed with a reference to each other. La. Civ. Code art. 13. The legislature is presumed to have enacted a statute with deliberation and with full knowledge of all existing laws on the same subject; thus, if it is possible to do so, every part of a statute must be given effect, for the legislature is not presumed to insert superfluous, useless and meaningless words, sentences, phrases, or clauses in its enactments. Colwell v. State, Office of Attorney General of Louisiana, Department of Justice, 506 So.2d 941, 944 (La.App. 1st Cir.), writ denied, 508 So.2d 89 (La. 1987).
[3] The state questioned whether or not a justice of the peace has authority to issue a restraining order. However, since the basis of the charge against defendant is the accusation that he collected fees for peace bonds, we need not resolve this issue. In light of the charge against defendant, the pertinent issue before us is whether or not defendant ordered the issuance of any peace bonds.
[4] The state introduced only one judgment which specifically ordered the issuance of a peace bond (i.e., the judgment in Kathryn Bruza v. Andrew Pier, number 91-0161, issued July 17, 1991). However, the judgment was neither issued nor signed by defendant. Rather, it was issued by Aubrey Pate, sitting as Justice of the Peace, Ad Hoc.