729 So.2d 548 (1999)
STATE of Louisiana
v.
Jerry SCHWEHM.
No. 98-K-1599.
Supreme Court of Louisiana.
March 19, 1999.
Richard P. Ieyoub, Atty. Gen., Walter P. Reed, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Jack E. Hoffstadt, for Applicant.
Lloyd Walters, Paul R. Baier, Baton Rouge, for Respondent.
PER CURIAM:[*]
Prosecutions for malfeasance of office as defined by La.R.S. 14:134(1) and 14:134(2) presuppose the existence of "a statute or provision of the law which delineates an affirmative duty upon the official." State v. Perez, 464 So.2d 737, 741 (La.1985). This duty "must be expressly imposed by law upon the official because the official is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will subject him to criminal charges." Id. In this prosecution of the former Justice of the Peace for the Eighth Ward in St. Tammany Parish on two counts of malfeasance, the court of appeal reversed the defendant's conviction on the count charging him with failure to remit litter fines to the appropriate governing authority from January 1, 1991 to December 31, 1993, on grounds that "even assuming defendant had a duty to remit some or all of the litter fines to the parish, no time for the performance of this duty was provided by law." State v. Schwehm, 97-1544, p. 5 (La.App. 1st Cir.5/15/98), 713 So.2d 697, 701. In the absence of such an express provision, and notwithstanding the appeal of the "common sense" proposition "that a requirement of reasonable promptness is implicit in the duty to remit," the court of appeal concluded that "defendant's failure to remit the litter fines to the parish [did] not constitute the criminal offense of malfeasance in office." Schwehm, 97-1544 at p. 6, 713 So.2d at 701.[1] *549 We granted the state's application for review of that decision because the evidence at trial fully supported a finding that, as the prosecution argued to jurors at trial, the defendant had intentionally refused to perform the duty imposed on him by law not only by failing to remit the fines within the three-year period or within any implicit reasonable period of time but also by converting the fines to his own use. The defendant's conduct has been unlawful in this state for well over a century, see 1855 La. Acts 120, § 80 (proscribing the embezzlement or conversion to his own use by a public official of funds for which he had responsibility of collecting on behalf of any parish or incorporated city), and it remains punishable today under La.R.S. 14:134. We therefore reverse the decision below.
At the time the defendant took office in December of 1990, La. R.S. 13:2586, 1989 La. Acts 296, gave justices of the peace in Louisiana "concurrent jurisdiction over litter violations prohibited by R.S. 25:1111[2] and any ordinance of a parish governing body providing for litter abatement or control that provides that the trial for the violation of any such ordinance may be in a justice of the peace court." La. R.S. 25:1112(A), 1989 La. Acts 768,[3] provided that all fines collected for littering in violation of La.R.S. 25:1111 "shall be paid to the local governing authority in which the offense was committed...." At the same time, R.S. 13:2589(B), 1989 La. Acts 296, required that local governing bodies receiving the fines reimburse "those justice of the peace courts ... for the time spent and expenses incurred ..." in the prosecution of litter violations. This provision for reimbursement constituted a specific and express exception to the requirement of R.S. 13:2589(A) that justices of the peace receive no fees in criminal cases "but in lieu therefor they shall receive such salaries as are fixed by the parish governing authority...." Consistent with this state law, St. Tammany Parish Police Jury Ordinance No. 89-1148, not formally made a part of the record at trial but discussed in the testimony of state auditors Scott Carlton and Earnest Levy, required that the justice of the peace courts remit all litter fines in full to the Police Jury which would, in turn, reimburse 50 per cent of the amount collected to the justice of the peace courts for the time spent and expenses incurred in enforcing the littering law. Neither the state law nor parish ordinance provided any time period for remitting the fines to the parish authority.
In 1992, the legislature plunged the entire matter of litter fine remittance into confusion by passing two conflicting laws, one purporting to repeal subsection La. R.S. 25:1112(A) altogether, 1992 La. Acts 361, and the other purporting to amend and reenact subsection La.R.S. 25:1112(A) to provide for fractional disbursements to various authorities, including 55 per cent to the local governing authority in which the offense was committed. 1992 La. Acts 362. Act 361 also purported to amend R.S. 25:1112(B) to provide that "[a]ll monies received under the provisions of this Part shall be paid into the state treasury on or before the twenty-fifth day of each month following their collection...." Subsequent acts passed in the same legislative session amended La.R.S. 25:1112(B) to require that "all other funds" be paid into the state treasury, as if R.S. 25:1112(A) were still in effect. 1992 La. Acts 665; 984 (emphasis added). This 1992 legislation appeared to place state law in direct conflict with the local St. Tammany Parish ordinance. Jurors learned at trial of Attorney General Opinion No. 93-470, which discussed the conflict in the 1992 legislation and possible solutions as to whether act 361, as modified by acts 655 and 984, or act 362 prevailed. The opinion ended with the advice that "this dilemma cannot be acted on with any certitude or protection except in one way: a judicial order specifying the distribution of the fine collected, in accordance with either Act 361 or Act 362 of 1992." Op. 93-470 at 5.
*550 One year later, the legislature resolved the matter by enacting R.S. 25:1112(A) to provide specifically that "[a]ll fines collected in justice of the peace courts and parish courts under the provisions of this Part shall be paid to the governing authority of the parish in which the offense was committed...." 1993 La. Acts 579. The act went into effect on August 15, 1993. In January of the following year, the state auditor began its investigation of the defendant which culminated in the present prosecution.
The lack under state and local law of any time period for remittance of the litter fines by justice of the peace courts, together with the confusion interjected into the law by the conflicting 1992 enactments regarding La. R.S. 25:1112(A), formed the core of the defense at trial, which conceded that the defendant had failed to remit any of the litter fines collected over the three-year period charged in the indictment, but argued against the culpability of that conduct under La R.S. 14:134. The state established through the testimony of state auditors Carlton and Levy that, in fact, "no remittance to the Parish had been made during the period Mr. Schwehm was the Justice of the Peace for the Eighth Ward of St. Tammany Parish." According to Levy, the defendant's records indicated that over the three-year period he had collected litter fines in the amount of $4,475.00 by check and $1,550.00 in cash. Levy found corresponding deposits in the defendant's Justice of the Peace bank account for the checks but "could not find any evidence that any of those amounts that were collected in cash had actually been deposited into the JP's account." Levy described that account as an ordinary bank account as opposed to an escrow account which "is normally used to hold funds in abeyance before they are actually turned over to another party, parties or entity." Asked by the prosecutor whether the defendant maintained an escrow account in addition to his regular justice of the peace account, Carlton replied, "Not that he told us about."
When Levy inquired about the fines, the defendant explained that the Parish had never instructed him about remitting the amounts collected. According to Levy, the defendant also told the auditor "that the costs of assessing and collecting the litter fines actually exceeded the amount of the proceeds from the fines." In the same meeting, however, the defendant informed the auditor "that any excess that he would have from a litter fine over expenses was split equally between himself and the Constable."
The auditors' investigation revealed that by September of 1993, the defendant had collected at least five thousand dollars in litter fines. At the same time, the defendant's Justice of the Peace account reflected a balance of only $3,500.00. When Levy combined the litter fines with the total amount the defendant had charged for issuing peace bonds over the same three-year period, the subject of the second malfeasance count, the figure rose to ten thousand dollars, nearly three time the amount shown as the balance in the Justice of the Peace account at the end of September, 1993. Levy's investigation had also revealed a pattern of disbursements from the account to the defendant in increasing amounts, from early draws of five hundred dollars to one thousand dollars by the spring of 1993. The auditors testified that they found nothing wrong in the defendant's use of the account to pay himself and the constable. However, the largest draw occurred on September 24, 1993, when the defendant wrote a check on his Justice of the Peace account for $8,840.00 payable to his professional law firm account maintained in New Orleans. That transfer of funds explained the low balance in the Justice of the Peace account for the month. Levy testified that by November of 1993, the balance in the Justice of the Peace account had risen to $8,710.00, still significantly lower than the total amounts collected by the defendant in litter fines and peace bond charges.
According to Belinda Durr, who worked as defendant's secretary for approximately five months at the end of 1992, when the office received cash for litter fines, defendant used the money in a variety of ways, dividing it with the constable "for office expenses or to go to lunch or whatever they wanted to do with it." Durr testified that when she asked *551 about the fines, and about whether the state received any of the money, defendant told her that "what they don't know doesn't hurt them." Maureen Perry, who also worked as a secretary for the defendant, told jurors that whatever cash was received in the office for litter fines or fees for issuing peace bonds would be "disburse[d] at the end of the week." Perry testified that when she asked the defendant about the litter fines, he replied that "it was his money and he said he could do what he wanted." The defendant made a similar statement to Mario Ventura, president of the St. Tammany Parish Justice of the Peace Association, in the early spring of 1992, when both men were attending a conference of justices of the peace in Lafayette. Ventura testified that when he asked the defendant whether he was turning over the litter fines to the parish the defendant replied that he was absorbing the money collected "in court costs ... eating it up in expenses." When Ventura asked how he was doing that, the defendant added, "Well, you're a smart guy, figure it out."
On this evidence, rational jurors could find that the missing cash fines, the defendant's statements to Durr, Perry, and Ventura, and especially the low balance in the Justice of the Peace account in September of 1993, below the total amount collected in litter fines and coinciding with the transfer of nearly nine thousand dollars from the account to his professional law account in New Orleans, all reflected the defendant's design to use the fine money collected to benefit himself and, coincidentally, his public office and not the governing authority of the parish, and that he had thereby intentionally refused to perform the duty placed upon him by law. As the state established on redirect of Carlton, the confusion in state law did not affect collection of the litter fines from January 1, 1991 until the summer of 1992, when either act 361 or 362 went into effect. State law and local ordinance gave defendant the right to expect reimbursement for the expense of collection from the St. Tammany Parish Police Jury, but only after he had remitted all of the fine money collected, and then only by half. The large transfer from defendant's Justice of the Peace account to his professional law account in September of 1993, after the effective date of 1993 La. 579, which clarified his duty in this respect, negated any defense suggestions that, at least with respect to the litter fines collected, the defendant maintained his St. Tammany account in the manner of an escrow account, holding the fines collected until the end of his term in office, the 1992 confusion in the law subsided, or until someone asked him for the money.
Accordingly, we reinstate the defendant's conviction and sentence on the count of malfeasance involving the collection of litter fines and remand this case to the court of appeal for consideration of the defendant's remaining assignments of error pretermitted on original appeal.
JUDGMENT REVERSED IN PART; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED TO THE COURT OF APPEAL.
LEMMON, J., dissents and assigns reasons.
LEMMON, J., Dissenting.
When a public official is charged with and convicted of theft of public funds, the betrayal of his public trust should be reflected in the harshness of the sentence. However, defendant was not charged with theft, apparently because of the difficulty of proving the intent element of the crime. Therefore, defendant was charged with the easier-to-prove crime of malfeasance.
Malfeasance requires proof that a clear duty was violated. State v. Perez, 464 So.2d 737 (La.1985). Here, there was clearly a duty to remit litter fines, but the time for performing that duty was not expressed in either La. Rev. Stat. 25:1112 (redesignated as La. Rev. Stat. 30:2532 by Act No. 1019 of 1995), or the parish ordinance. If the revised statutes or the ordinance are to be used for criminal purposes under the charge of malfeasance, they must specify the time limitation for performance of the duty. Otherwise, someone charged with failure to remit for one week might be found guilty by one *552 jury, whereas another jury might find someone who failed to remit for one month not guilty. This example illustrates the problem inherent in leaving a jury without a clear standard on which to decide the case. Given the lack of any clear standard in effect at the time the alleged offense occurred, I dissent from the majority's opinion reinstating the jury conviction on this count.
NOTES
[*] Victory, J., not on panel. See Rule IV, Part II, § 3.
[1] As to the second count, the court of appeal affirmed by split panel the defendant's conviction for violating state law by charging fees in a total amount of over four thousand dollars for the lodging and filing of peace bonds. Schwehm, 97-1544 at pp. 6-8, 713 So.2d at 702-03 (Chaisson, pro tem., dissenting in part). This Court denied the defendant's cross application to review that part of the judgment below. State v. Schwehm, 98-1942 (La.11/13/98), 730 So.2d 933.
[2] Redesignated as La.R.S. 30:2531 by 1995 La. Acts 1019.
[3] Redesignated as La.R.S. 30:2532 by 1995 La. Acts 1019.