# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 16-282

**THE INDEPENDENT WEEKLY, LLC**

**VERSUS**

**LAFAYETTE CITY MARSHAL BRIAN POPE**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20155737
HONORABLE JULES DAVIS EDWARDS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

**EXCEPTION OF NO CAUSE OF ACTION OVERRULED.
MOTION TO STRIKE GRANTED.
AFFIRMED.**

Gary McGoffin
Durio, McGoffin, Stagg & Ackermann, P.C.
P. O. Box 51308
Lafayette, LA 70505
(337) 233-0300
COUNSEL FOR PLAINTIFF-APPELLEE:
    The Independent Weekly, LLC

Mark David Plaisance
Attorney at Law
P. O. Box 796
Thibodaux, LA 70302-0789
(985) 227-4588
COUNSEL FOR DEFENDANT- APPELLANT:
    Lafayette City Marshal Brian Pope

**PICKETT, Judge.**

Brian Pope, Lafayette City Marshal, appeals a judgment of the trial court finding he was unreasonable and arbitrary in his responses to two public records requests filed on behalf of The Independent Weekly and awarding statutory penalties and attorney fees.

## STATEMENT OF THE CASE

On October 8, 2015, Christiaan Mader, a staff writer for The Independent Weekly, made a request for public records via email to Mr. Pope as custodian of the records of the Lafayette City Marshal's Office. Mr. Pope had held a press conference on October 7, 2015, alleging that Mark Garber, a candidate for Lafayette Parish Sheriff, had urged Hondurans to immigrate illegally to the United States on Honduran television. In his public records request, Mr. Mader asked for:

> All emails sent or received by bpope@lafayettela.gov or any other email address utilized by Marshal Pope to conduct the business of the city marshal's office for the time period September 1, 2015 to the present, that contain the following words in the email address of the Sender, the Recipient, any CC or BCC, or the Subject or content of the email:
>
> Garber, Neustrom, Chad, Leger, immigration, Honduras, worker, compensation, illegal, alien, haven, Castille, or Team Leger, personal injury, campaign, campaigner, mailing list

Mr. Pope acknowledges receiving the request on October 9, 2015. On October 13, Mr. Mader sent an email reminding Mr. Pope of his public records request. Mr. Pope responded on October 14 as follows:

> In response to your email of October 8, 2015, proposed "Public Records Request," made on me and my office, please be advised that any potential responsive data and the requested method of transmittal of any potentially responsive data is protected under LSA R.S. 44:1 et seq., pursuant to Louisiana Attorney General Opinion 13-0141 and LSA R.S. 44:3, as reasonably anticipated by this office.

The Independent Weekly, through counsel, requested clarification of the grounds for refusing to provide the requested documents by letter to Mr. Pope and his counsel dated October 16, 2015. Mr. Pope's counsel responded by explaining that the only emails that may be responsive to the public records request were replies to an email about the October 7 press conference that he had sent via a third-party distributor.

On November 16, 2015, The Independent Weekly filed a Petition for Declaratory Judgment, Mandamus and All Applicable Relief Pursuant to the Louisiana Public Records Law (LRS 44:1, et seq.). In his answer, Mr. Pope specifically denied that he found any emails that contained the key words or phrases of Mr. Mader's public records request.

While this action was pending, The Independent Weekly, through its counsel, propounded a second public records request on Mr. Pope on November 30, 2015, listing fourteen different types of records. This request included the log and search documentation which led Mr. Pope to aver in his answer that there were no responsive documents to the first public records request, and any communications between Mr. Pope and Chad Leger's campaign for Lafayette Parish Sheriff regarding the preparation and distribution of the October 6 Press Conference Advisory in anticipation of the October 7 Press Conference and the October 7 Press Release related to Mr. Garber. This second public records request also included any emails to or from Mr. Pope sent using Campaigner software. Mr. Pope, through counsel, denied that any of the records existed or objected to the requests as actually being interrogatories. The Independent Weekly made an identical public records request on Lafayette Consolidated Government (LCG), as custodian of the server which housed lafayettela.gov emails.

On December 14, 2015, the court held a hearing in this case. Following the hearing, the trial court signed a judgment (1) quashing the discovery requests propounded by Mr. Pope on The Independent Weekly, (2) allowing The Independent Weekly to file a Supplemental Petition to include the failure of Mr. Pope to respond to the November 30, 2015 request for public records, (3) scheduling the deposition of Mr. Pope for December 28, 2015 and a hearing on January 4, 2016, and (4) finding Mr. Pope's response to the October 8 public records request inadequate, issuing an injunction prohibiting Mr. Pope from withholding any responsive records, and ordering such records production by December 17, 2015.

Mr. Pope, as suggested by the trial court at the hearing, hired a technical expert to search his email for the documents. On December 17, Mr. Pope produced 588 pages of emails in response to the first public records request. No emails between Mr. Pope and Joe Castille, Mr. Leger's campaign manager, were included in those 588 pages. In addition to the documents produced by Mr. Pope, LCG produced 79 additional documents in response to the public records request sent to it. LCG produced emails between Mr. Castille and Mr. Pope about the form and content of the press conference advisory of October 6, the content of the press conference of October 7, the press advisory issued after the press conference on October 7, and the text of endorsements of Mr. Leger by Mr. Pope drafted by Mr. Castille and approved by Mr. Pope. The documents produced by LCG also included emails sent by Campaigner to bpope@lafayettela.gov asking for authorization to use that email address "as a From address when sending email campaigns," as well as emails sent by Campaigner using Mr. Pope's bpope@lafayettela.gov email address in the "From" section.

At the January 4, 2016 hearing, Mr. Pope objected to the production of documents by LCG, on the grounds that they were not the custodians of those documents. The trial court overruled that objection, finding that because the Marshal's office used lafayettela.gov email addresses that were stored on a server operated by LCG, LCG was the custodian of those public documents. In a judgment dated January 14, 2016, the trial court further found that Mr. Pope "was unreasonable and arbitrary in providing woefully inadequate responses to the public records requested by The Independent on October 8, 2015 and November 30, 2015." The trial court assessed statutory penalties of $100 per day for failure to respond to both public records requests, with the amounts accruing until complete responses were made. The trial court awarded attorney fees and costs, with the determination of the amounts held over for a future hearing. The trial court ordered Mr. Pope to show cause why he should not be held in contempt of court for failure to comply with the Louisiana Public Records Law and the December 14, 2015 order of the court. Finally, the court ordered that Mr. Pope was personally liable for the payment of any damages in solido with the Marshal's Office.

Mr. Pope now appeals.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Pope asserts three assignments of error:

1. The trial court erred in finding Pope unreasonable and arbitrary in providing responses to two public records requests. Because Pope responded, and claimed exemptions, through counsel, within three days of the request as provided by law, the trial court committed error in awarding statutory civil penalties, attorney fees, and costs.

2. The trial court erred in awarding statutory civil penalties, attorney fees, and costs against Pope personally and in solido

4

with the Lafayette Marshal's Office. A party who relies upon counsel to respond to a public records request is not personally liable for such penalties. La.R.S. 44:35(E)(2).

3. The trial court erred in awarding attorney fees in excess of the amounts approved by the Attorney General for outside counsel.

In addition, Mr. Pope has filed a Peremptory Exception of No Right of Action in this court, alleging that the individuals who made the public records requests, Mr. Mader and counsel for The Independent Weekly are the proper parties to bring suit to enforce the Public Records Law, not The Independent Weekly. Mr. Pope also filed a Motion to Strike certain portions of The Independent Weekly's brief which reference hearings that occurred after the signing of the judgment from which he has appealed.

## DISCUSSION

*Exception of No Right of Action*

We will address the exception of no right of action first, since a ruling in favor of Mr. Pope would render this appeal moot. The function of an exception of no right of action is to determine whether a plaintiff has a judicial right to enforce the right asserted in the lawsuit. *Yolanda F.B. v. Robert D.R.*, 00-958 (La.App. 3 Cir. 12/6/00), 775 So.2d 1107. A peremptory exception of no right of action may be brought at any time, including on appeal. La.Code Civ.P. art. 2163; *Lambert v. Donald G. Lambert Constr. Co.*, 370 So.2d 1254 (La.1979).

Mr. Pope asserts that the public records requests were submitted by Mr. Mader and counsel for The Independent Weekly, not the newspaper itself, and therefore the proper parties to enforce the provisions of the Public Records Law are those individuals, citing the first circuit's opinion in *Vourvoulias v. Movassaghi*, 04-262 (La.App. 1 Cir. 2/11/05), 906 So.2d 461. In *Vourvoulias*, the court held

5

that a company's general counsel had no right to enforce the provisions of the Public Records Law where the original request for public records was made by a legal assistant for the company's law firm. The court specifically found that no agency relationship existed between Mr. Vourvoulias and the requester. The case before us is distinguishable.

Mr. Mader made the October 8 public records request and clearly indicated that he was a staff writer for The Independent Weekly. Counsel for The Independent Weekly clearly indicated that the November 30 public records request was made on behalf of The Independent Weekly. Thus, the evidence clearly indicates that an agency relationship existed between The Independent Weekly and the individuals who requested the public records from Mr. Pope.

Likewise, Mr. Pope's reliance on *In re Matter Under Investigation*, 07-1853, 07-1870, 08-1066 (La. 7/1/09), 15 So.3d 972, is misplaced. The news organization in that case, CNN, sought to intervene in a suit between a hospital and the Attorney General's office. The hospital was attempting to recover records taken by the Attorney General in the course of an investigation. CNN sought to require the hospital to produce the records pursuant to the Public Records Law, but the supreme court held that the Attorney General, rather than the hospital, was the custodian of the records being sought.

Mr. Pope cites *Red Stick Studio Development, L.L.C. v. State, through the Department of Economic Development*, 09-1349, p. 7 (La.App. 1 Cir. 4/8/10), 37 So.3d 1029, 1035, *writ denied*, 10-1501 (La. 10/1/10), 45 So.3d 1102, which states:

> In denying the objection of no right of action in the instant case, the trial court stated that because Mr. Clark was acting not "individually" but in "his representative capacity" when he made the

6

> public records requests to the State, the exception was not well-founded. However, as this court has determined in the *Vourvoulias* case, the existence, or non-existence, of an agency relationship is not the turning point in a case such as this one. Rather, one must simply look to the language of the LPRA, more specifically, La. R.S. 44:35, to see that only the person who makes the request to inspect or copy a public record and is denied that right belongs to the class of persons to whom the law grants the cause of action.

We find this analysis improper. In *Vourvoulias*, the first circuit pointed out that there was no evidence of an agency relationship between the requester of public records and the person enforcing the right in court, but did not determine if such an agency relationship would create a right of action in that case. Rather, we agree with Chief Judge Carter, who, in dissent in *Red Stick*, found that Mr. Clark, Red Stick's counsel, requested the public records on behalf of Red Stick. Because Mr. Clark was clearly requesting public records on behalf of Red Stick, Chief Judge Carter concluded that Red Stick had a right to file suit under the Public Records Law.

At oral argument, Mr. Pope made the argument that because La.R.S. 44:31(B)(1) and 44:32(A) reference "any person of the age of majority," it follows that only natural persons have a right to pursue a claim under the Public Records Law. We find this argument unpersuasive. Initially, we note that La.R.S. 1:10 states, "Unless it is otherwise clearly indicated, the word 'person' includes a body of persons, whether incorporated or not." Thus, we must presume that the reference to "person" in the Public Records Law refers to not only natural persons, but to corporations or companies such as The Independent Weekly.

There are only two references to "person of the age of majority" in the Public Records Law. First, La.R.S. 44:31(B)(1) states, "Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in

7

accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record." But La.R.S. 44:31(B)(2) states, "Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record." We note the only difference in these two provisions is the ability of a "person of the age of majority" to inspect the public records. This makes sense, as a corporation can only inspect a document through its representatives. "[C]ourts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *Hollingsworth v. City of Minden*, 01-2658, p. 5 (La. 6/21/02), 828 So.2d 514, 517.

The only other reference to "person of the age of majority" is La.R.S. 44:32(A), which states, in pertinent part, "The custodian shall present any public record to any person of the age of majority who so requests." Again, the statute specifically refers to someone who presents himself to inspect a public record. Conversely, La.R.S. 44:32(C)(emphasis added) states:

> (1)(a) For all public records, except public records of state agencies, it shall be the duty of the custodian of such public records to provide copies to **persons** so requesting. The custodian may establish and collect reasonable fees for making copies of public records. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state.

> (b) For all public records in the custody of a clerk of court, the clerk may also establish reasonable uniform written procedures for the reproduction of any such public record. Additionally, in the parish of Orleans, the recorder of mortgages, the register of conveyances, and the custodian of notarial records may each establish reasonable uniform procedures for the reproduction of public records.

> (c) The use or placement of mechanical reproduction, microphotographic reproduction, or any other such imaging, reproduction, or photocopying equipment within the offices of the

clerk of court by any person described in R.S. 44:31 is prohibited unless ordered by a court of competent jurisdiction.

(d) **Any person**, as provided for in R.S. 44:31, may request a copy or reproduction of any public record and it shall be the duty of the custodian to provide such copy or reproduction to **the person** so requesting.

(2) For all public records of state agencies, it shall be the duty of the custodian of such records to provide copies to **persons** so requesting. Fees for such copies shall be charged according to the uniform fee schedule adopted by the commissioner of administration, as provided by R.S. 39:241.

Copies shall be provided at fees according to the schedule, except for copies of public records the fees for the reproduction of which are otherwise fixed by law. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state or the persons whose use of such copies, as determined by the custodian, will be limited to a public purpose, including but not limited to use in a hearing before any governmental regulatory commission.

(3) No fee shall be charged to **any person** to examine or review any public records, except as provided in this Section, and no fee shall be charged for examination or review to determine if a record is subject to disclosure, except as may be determined by a court of competent jurisdiction.

When the issue is a request for a copy of documents, the statute consistently uses the more inclusive terms "person" or "persons," rather than the more restrictive "person of the age of majority." Furthermore, La.R.S. 44:35, which concerns the enforcement of the Public Records Law by filing suit, refers to "[a]ny person," without the restriction on age that would only apply to a natural person.

We conclude that The Independent Weekly has a right of action to enforce its rights pursuant to the Public Records Law. The Exception of No Right of Action is overruled.

9

Mr. Pope has filed a Motion to Strike, seeking to excise all references to court proceedings and judgments that occurred after the date of the judgment in this case, January 14, 2016. These documents are included in the appellate record before this court, and The Independent Weekly argues that it cannot be precluded from making references to documents contained in the appellate record.

Mr. Pope filed a Motion for Appeal on February 16, 2016, appealing the judgment signed by the trial court on January 14, 2016. The trial court issued an order granting a suspensive appeal on February 16, 2016. That is the appeal now before this court. The trial court retained jurisdiction to consider the issue of contempt and to award costs. *See* La.Code Civ.P. art. 2088. The trial court held a hearing on March 22, 2016. The trial court signed a judgment on March 24, 2016, wherein it found Mr. Pope in contempt of court and set the amount of civil penalties and attorney fees levied against Mr. Pope. Mr. Pope filed a writ of supervisory review with this court arguing that the trial court erred in finding him in constructive contempt of court. This court denied Mr. Pope's application for supervisory writs. *The Independent Weekly, LLC v. Pope (In re: Contempt of Court)*, an unpublished writ bearing docket number 16-327 (La.App. 3 Cir. 6/21/16).

In the appeal record prepared for this appeal, all of these proceedings subsequent to the judgment of January 14, 2016, are included. Mr. Pope objects to the references made by The Independent Weekly to those subsequent proceedings, specifically the finding of contempt. We agree that our review is limited to the evidence considered by the trial court before reaching its decision memorialized in the judgment signed January 14, 2016. *See Black Water Marsh, LLC v. Roger C.*

10

*Ferriss Prop., Inc.*, 13-477 (La.App. 3 Cir. 1/8/14), 130 So.3d 968, *writ denied*, 14-660 (La. 5/2/14), 138 So.3d 1248. The motion to strike is granted insofar as The Independent Weekly's brief references proceedings that occurred after the judgment of the trial court that is the subject of this appeal, and we will not consider those proceedings in analyzing the issues before us.

*Quantum of Attorney Fees*

In his third assignment of error, Mr. Pope complains that the attorney fees awarded to The Independent Weekly are excessive. While the trial court indicated in the judgment before us that The Independent Weekly was entitled to attorney fees, the amount of attorney fees was the subject of a later hearing and judgment. That judgment is not currently before us on appeal. We therefore lack jurisdiction to consider this assignment of error in this appeal.

*Unreasonableness and arbitrariness of Mr. Pope's responses*

Mr. Pope argues on appeal that the trial court erred in finding that he failed to respond to the public records request submitted on behalf of The Independent Weekly. Louisiana Constitution Article XII, Section 3, states, "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." Pope claims that he responded within three days as required by La.R.S. 44:32(D), which states:

> In any case in which a record is requested and a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor. Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction.

Louisiana Revised Statutes 44:35 sets out the enforcement provisions of the

Louisiana Public Records Law:

A. Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.

B. In any suit filed under Subsection A above, the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action. The court may view the documents in controversy in camera before reaching a decision. Any noncompliance with the order of the court may be punished as contempt of court.

C. Any suit brought in any court of original jurisdiction to enforce the provisions of this Chapter shall be tried by preference and in a summary manner. Any appellate courts to which the suit is brought shall place it on its preferential docket and shall hear it without delay, rendering a decision as soon as practicable.

D. If a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails in such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.

E. (1) If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and

legal public holidays for each such day of such failure to give notification.

(2) The custodian shall be personally liable for the payment of any such damages, and shall be liable in solido with the public body for the payment of the requester's attorney fees and other costs of litigation, except where the custodian has withheld or denied production of the requested record or records on advice of the legal counsel representing the public body in which the office of such custodian is located, and in the event the custodian retains private legal counsel for his defense or for bringing suit against the requester in connection with the request for records, the court may award attorney fees to the custodian.

F. An award for attorney fees in any suit brought under the provisions of this Chapter shall not exceed the amounts approved by the attorney general for the employment of outside counsel.

The trial court is afforded great discretion in awarding civil penalties under the Public Records Law, and the court of appeal will not overturn an award of penalties absent an abuse of that discretion. *Innocence Project New Orleans v. New Orleans Police Dep't*, 13-921 (La.App. 4 Cir. 11/6/13), 129 So.3d 668.

Mr. Pope argues that because he responded to Mr. Mader's request on October 14, he should not be penalized. That response claimed exemptions to disclosure of the records requested because they were private emails exchanged over a public server, citing Attorney General Opinion 13-141, and the exception for ongoing investigations found at La.R.S. 44:3. On October 16, Mr. Pope's counsel, in a letter to counsel for The Independent Weekly, stated that, according to Mr. Pope, the only documents that were responsive to the public records request were "email replies he received in reply to the subject 'press conference notice' he had sent out via mass distribution via third party vendor across the country[.]" Mr. Pope's counsel further stated:

Lastly, as a theoretical point in connection with Attorney General Opinion 13-0141, if my client had any emails whether sent or received in connection with containing the key phrases, particularly,

"Garber, Neustrom, immigration, workers compensation, or illegal alien," since September 1, 2015, it is our position they would be exempt from production as evidencing the promotion and condoning of criminal actions of "illegal status" foreigners' presence and residence in our parish. No doubt it is illegal activity by the promoters or condoners of such illegal activity while being a parish law enforcement official or member of the Louisiana Bar Association. It's obvious that it's illegal for a sheriff, police chief, or marshal to condone and/or promote any illegal activity and therefore, such illegal acts of promoting and condoning illegal foreigners to reside in Lafayette Parish illegally or fail to detain illegal foreigners caught by law enforcement, would more than likely become the subject of a criminal investigation by the Federal Government. As for lawyers, if we either tacitly or expressly promote illegal activity i.e. promoting illegal foreigners presence in our parish, state or country "who might get hurt on the job hereto file workers compensation claims and not be deported here in Lafayette" would certainly sooner or later lead to an investigation by The Office of Disciplinary Counsel for the Louisiana State Bar Association and a criminal investigation by the local arm of the Federal Government, whether, Attorney General, Immigration Department or ICE.

In response to the petition which instituted this action, Mr. Pope's answer averred that "Pope did not turn over any responsive emails because his search failed to produce any." The trial court found, following the December hearing, that the responses Mr. Pope provided to the October 8 request for documents were inadequate. Then, when Mr. Pope hired a technician to search his emails following the hearing of December 14, Mr. Pope produced 588 pages of responsive documents to the original records request. There is no evidence that any of the documents the technician found were withheld because they contained matters incident to a criminal investigation or private emails, the original reasons given for failing to turn over any documents. Furthermore, the public records request was for emails received or sent to Mr. Pope's official email address. Mr. Pope was in the best position to know what emails he had sent or received, and whether they contained the terms listed in the public records request submitted by The Independent Weekly. As to the November 30 public records request, there were

14

fourteen items listed, and Mr. Pope simply denied that he had any of the items requested related to search logs for the documents requested on October 8, to communications with Mr. Leger's campaign, or to emails sent from Mr. Pope's email address using Campaigner software. The documents turned over by Mr. Pope on December 17 did not include any of the emails between Mr. Pope and Mr. Castille, Mr. Leger's campaign surrogate, which were provided by LCG. At the December hearing, Mr. Pope denied any knowledge of Campaigner software used to send emails in his name, but the LCG documents show that he received an email asking him to authorize use of bpope@lafayettela.gov for Campaigner emails.

We find the trial court did not abuse its discretion in finding that while Mr. Pope responded to both requests within three days, his responses were "woefully inadequate." We do not believe that just any answer is sufficient to avoid civil penalties pursuant to La.R.S. 44:35(E)(1). We further find no abuse of discretion in the trial court's finding that the failure of Mr. Pope to respond adequately was unreasonable and arbitrary. Therefore, we find the imposition of civil penalties of $100 per day and attorney fees for failure to adequately respond to the October 8 and November 30 public records request was within the discretion of the trial court.

## *In Solido Liability of Mr. Pope*

Mr. Pope argues that because he relied on the advice of his counsel in responding to the public records request, he should not be held liable in solido with the Lafayette Marshal's Office for failure to produce the records. We disagree. The evidence suggests that Mr. Pope denied that any records responsive to the records requests existed, and his attorney's responses on his behalf consistently indicated that there were no documents, save for some third-party emails, that

could be construed to be subject to production. Ultimately, Mr. Pope produced 588 pages of responsive documents, but failed to produce other responsive documents that were not subject to any exception or exemption to the Public Records Law, including the letters to and from Mr. Castille   We find the trial court did not commit error in finding that Mr. Pope did not rely on advice of his attorney in refusing to turn over these public documents.

## CONCLUSION

The exception of no right of action filed by Mr. Pope is overruled.  The motion to strike references to proceedings which occurred after the judgment subject to this appeal is granted.  The judgment of the trial court is affirmed.  Costs of this appeal are assessed to the Lafayette Parish Marshal's Office and Mr. Pope in solido in the amount of $6,375.09.

**EXCEPTION OF NO CAUSE OF ACTION OVERRULED.**
**MOTION TO STRIKE GRANTED.**
**AFFIRMED.**