# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-670


STATE OF LOUISIANA

VERSUS

BRIAN L. POPE


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR-159455
HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and D. Kent Savoie, Judges.


**SENTENCES VACATED. CONVICTIONS AFFIRMED.
GRANT OF MOTION FOR ACQUITTAL AFFIRMED.
REMANDED WITH INSTRUCTIONS.**

**John S. McLindon**
**Walters Papillion Thomas Cullens**
**12345 Perkins Rd, Bldg 2, Ste. 202**
**Baton Rouge, LA 70810**
**(225) 236-3636**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Brian L. Pope**

**Hon. Keith A. Stutes**
**Fifteenth Judicial District Attorney**
**Allan P. Haney**
**Assistant District Attorney**
**Kenneth P. Hebert**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Brian L. Pope, was indicted on November 30, 2016, on two counts of perjury, violations of La.R.S. 14:123, and five counts of malfeasance in office, violations of La.R.S. 14:134. On October 3, 2018, a jury found Defendant guilty as charged on Count 1, perjury, and on Counts 5, 6, and 7, malfeasance in office. The jury found Defendant not guilty on Count 2, perjury, and Counts 3 and 4, malfeasance in office. Defendant filed a motion for judgment of acquittal on March 18, 2019. The trial court granted that motion only as to Count 1, perjury, on June 19, 2019. Defendant appeals his convictions, and the State appeals the grant of Defendant's motion for judgment of acquittal. For the reasons that follow, we vacate Defendant's sentences, affirm his convictions, and affirm the trial court's judgment of acquittal.

## FACTS

Defendant was the Lafayette City Marshal in 2015. The factual background is set out, in part, in *Independent Weekly, LLC v. Lafayette City Marshal Pope*, 16-282, pp. 1-4 (La.App. 3 Cir. 9/28/16), 201 So.3d 951, 953-55, *writ denied*, 16-1942 (La. 12/16/16), 212 So.3d 1172:

> On October 8, 2015, Christiaan Mader, a staff writer for The Independent Weekly, made a request for public records via email to Mr. Pope as custodian of the records of the Lafayette City Marshal's Office. Mr. Pope had held a press conference on October 7, 2015, alleging that Mark Garber, a candidate for Lafayette Parish Sheriff, had urged Hondurans to immigrate illegally to the United States on Honduran television. In his public records request, Mr. Mader asked for:
>
> > All emails sent or received by bpope@lafayettela.gov or any other email address utilized by Marshal Pope to conduct the business of the city marshal's office for the time period September 1, 2015 to the present, that contain the following words in the email address of the Sender, the Recipient, any CC or BCC, or the Subject or content of the email:

Garber, Neustrom, Chad, Leger, immigration, Honduras, worker, compensation, illegal, alien, haven, Castille, or Team Leger, personal injury, campaign, campaigner, mailing list

Mr. Pope acknowledges receiving the request on October 9, 2015. On October 13, Mr. Mader sent an email reminding Mr. Pope of his public records request. Mr. Pope responded on October 14 as follows:

> In response to your email of October 8, 2015, proposed "Public Records Request," made on me and my office, please be advised that any potential responsive data and the requested method of transmittal of any potentially responsive data is protected under LSA R.S. 44:1 et seq., pursuant to Louisiana Attorney General Opinion 13-0141 and LSA R.S. 44:3, as reasonably anticipated by this office.

The Independent Weekly, through counsel, requested clarification of the grounds for refusing to provide the requested documents by letter to Mr. Pope and his counsel dated October 16, 2015. Mr. Pope's counsel responded by explaining that the only emails that may be responsive to the public records request were replies to an email about the October 7 press conference that he had sent via a third-party distributor.

On November 16, 2015, The Independent Weekly filed a Petition for Declaratory Judgment, Mandamus and All Applicable Relief Pursuant to the Louisiana Public Records Law (LRS 44:1, et seq.). In his answer, Mr. Pope specifically denied that he found any emails that contained the key words or phrases of Mr. Mader's public records request.

While this action was pending, The Independent Weekly, through its counsel, propounded a second public records request on Mr. Pope on November 30, 2015, listing fourteen different types of records. This request included the log and search documentation which led Mr. Pope to aver in his answer that there were no responsive documents to the first public records request, and any communications between Mr. Pope and Chad Leger's campaign for Lafayette Parish Sheriff regarding the preparation and distribution of the October 6 Press Conference Advisory in anticipation of the October 7 Press Conference and the October 7 Press Release related to Mr. Garber. This second public records request also included any emails to or from Mr. Pope sent using Campaigner software. Mr. Pope, through counsel, denied that any of the records existed or objected to the requests as actually being interrogatories. The Independent Weekly made an identical public records request on Lafayette Consolidated Government (LCG), as custodian of the server which housed lafayettela.gov emails.

On December 14, 2015, the court held a hearing in this case. Following the hearing, the trial court signed a judgment (1) quashing the discovery requests propounded by Mr. Pope on The Independent Weekly, (2) allowing The Independent Weekly to file a Supplemental Petition to include the failure of Mr. Pope to respond to the November 30, 2015 request for public records, (3) scheduling the deposition of Mr. Pope for December 28, 2015 and a hearing on January 4, 2016, and (4) finding Mr. Pope's response to the October 8 public records request inadequate, issuing an injunction prohibiting Mr. Pope from withholding any responsive records, and ordering such records production by December 17, 2015.

Mr. Pope, as suggested by the trial court at the hearing, hired a technical expert to search his email for the documents. On December 17, Mr. Pope produced 588 pages of emails in response to the first public records request. No emails between Mr. Pope and Joe Castille, Mr. Leger's campaign manager, were included in those 588 pages. In addition to the documents produced by Mr. Pope, LCG produced 79 additional documents in response to the public records request sent to it. LCG produced emails between Mr. Castille and Mr. Pope about the form and content of the press conference advisory of October 6, the content of the press conference of October 7, the press advisory issued after the press conference on October 7, and the text of endorsements of Mr. Leger by Mr. Pope drafted by Mr. Castille and approved by Mr. Pope. The documents produced by LCG also included emails sent by Campaigner to bpope@lafayettela.gov asking for authorization to use that email address "as a From address when sending email campaigns," as well as emails sent by Campaigner using Mr. Pope's bpope@lafayettela.gov email address in the "From" section.

At the January 4, 2016 hearing, Mr. Pope objected to the production of documents by LCG, on the grounds that they were not the custodians of those documents. The trial court overruled that objection, finding that because the Marshal's office used lafayettela.gov email addresses that were stored on a server operated by LCG, LCG was the custodian of those public documents. In a judgment dated January 14, 2016, the trial court further found that Mr. Pope "was unreasonable and arbitrary in providing woefully inadequate responses to the public records requested by The Independent on October 8, 2015 and November 30, 2015." The trial court assessed statutory penalties of $100 per day for failure to respond to both public records requests, with the amounts accruing until complete responses were made. The trial court awarded attorney fees and costs, with the determination of the amounts held over for a future hearing. The trial court ordered Mr. Pope to show cause why he should not be held in contempt of court for failure to comply with the Louisiana Public Records Law and the December 14, 2015 order of the court. Finally, the court ordered that Mr. Pope was personally liable for the payment of any damages in solido with the Marshal's Office.

On March 24, 2016, the trial court held Defendant in contempt of court for failure to comply with the public records request in the civil action. Gary McGoffin, attorney for *The Independent Weekly*, filed a complaint with the District Attorney's office against Defendant after the records were finally produced. The criminal charges, which are the subject of this appeal, arose out of that complaint. The three counts on which Defendant was found guilty arose from payments made by the Marshal's office to three attorneys who performed work that was associated with the public records request and subsequent investigation by the District Attorney.

**ANALYSIS**

*Errors Patent*

This court reviews all records for facially-patent errors pursuant to La.Code Crim.P. art. 920.

On each of Defendant's three counts of malfeasance in office, the trial court sentenced him to serve three years in the parish jail, with all but one year suspended and the sentences to run concurrently. Immediately thereafter, the trial court stated, "There will be 240 hours of community service, a fine of $1,500 and court costs." Restitution in the amount of $11,700.00 was also imposed by the court. Finally, the court specified that the period of probation was to be three years.

Louisiana Revised Statutes 14:134 provides, in pertinent part:

> C. (1) Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both.

> (2) In addition to the penalty provided for in Paragraph (1) of this Subsection, a person convicted of the provisions of this Section may be ordered to pay restitution to the state if the state suffered a loss as a result of the offense. Restitution shall include the payment of legal interest at the rate provided in R.S. 13:4202.

First, the trial court imposed indeterminate sentences when it failed to specify on which count or counts it imposed the probation, community service, fine, court

4

costs, and restitution. Additionally, it is unclear whether these were imposed as part

of Defendant's principal sentence or as conditions of probation. In *State v. Morris*,

05-725, pp. 9-11 (La.App. 3 Cir. 12/30/05), 918 So. 2d 1107, 1113-14, this court

discussed a similar issue:

> The trial court imposed indeterminate sentences because it suspended the sentences and placed Defendant on five years of supervised probation without specifying to which count or counts the probation applied. After imposing a sentence on each count, the trial court ordered the sentences to run concurrently with each other. It then stated, "The jail terms are suspended and you are placed on supervised probation for 5 years." The trial court then imposed the conditions of La.Code Crim.P. art. 895 and several special conditions of probation.
>
> We recently addressed a similar issue and found the sentences to be indeterminate:
>
>> After ordering each of the Defendant's sentences to run concurrently, and after suspending the execution of each sentence, the trial court placed the Defendant on supervised probation for a period of four years. The trial court failed to specify, however, whether the four-year probationary period applied to one or both counts of theft. Thus, the sentences imposed by the trial court are indeterminate. This court faced a similar issue in *State v. Taylor*, 01–680, p. 2 (La.App. 3 Cir. 11/14/01), 801 So.2d 549, 550, wherein this court stated the following:
>>
>>> After suspending five years of the defendant's eight-year sentence and the totality of the six-year sentence, the trial court imposed a five-year supervised probation period. It is unclear, however, to which sentence this probation period applies or whether it applies to each. Thus, the sentences are indeterminate and in violation of La.Code Crim.P. art. 879, which provides: "If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence."
>>>
>>> Finding the defendant's sentences indeterminate, we vacate the sentences and remand this matter to the trial court for the imposition of determinate sentences. In doing so, we instruct the trial court to specify whether the periods of probation are to be served concurrently or consecutively and

> > upon what point the probated sentences begin as to each count. *See* La.Code Crim.P. art. 883.

> *Id*. at 550.

> > Likewise, this court finds the sentences imposed in the present case are indeterminate. Accordingly, the sentences are vacated and the case remanded for the imposition of determinate sentences. This court instructs the trial court "to specify whether the periods of probation are to be served concurrently or consecutively and upon what point the probated sentences begin as to each count." *Taylor,* 801 So.2d at 550.

> *State v. Williamson,* 04–1440, pp. 1–2 (La.App. 3 Cir. 3/2/05), 896 So.2d 302, 304.

Similarly, the trial court in the present case failed to specify to which count or counts the five-year probationary period applied. Thus, following *Taylor* and *Williamson*, we find Defendant's sentences are indeterminate and remand the case for resentencing. Upon remand, the trial court is instructed that if probation is imposed, it should specify on what count or counts it is being imposed.

In *State v. Vidrine*, 19-210, pp. 9-15 (La.App. 3 Cir. 10/2/19), 280 So.3d 664, 669-73, the court stated:

> There is one error patent regarding the sentence imposed for illegal possession of stolen things that requires the sentence to be vacated and the case remanded for resentencing. The trial court's restitution order is indeterminate in two respects. First, the restitution order is indeterminate because it is unclear whether the trial court imposed the restitution as part of the principal sentence or as a condition of probation. "The Code of Criminal Procedure provides for the imposition of restitution either as a condition of probation (La. Code Crim.P. arts. 895 and 895.1) or as part of the principal sentence (La. Code Crim.P. art. 883.2)." *State v. Mingo*, 15-435, p. 3 n. 4 (La.App. 1 Cir. 9/18/15), 2015 WL 5516277 (unpublished opinion), *writ denied*, 15-1896 (La. 3/14/16), 189 So.3d 1072. When the trial court in the present case first mentioned restitution at sentencing, it did not state that it was being imposed as a condition of probation. . . .

> . . . .

> For the foregoing reasons, the sentence for illegal possession of stolen things valued at $1,500.00 or more is vacated and the case is remanded for resentencing. In the event restitution is imposed by the trial court, the amount must be specified. Additionally, if Defendant is placed on probation, the trial court must specify whether the restitution

6

is imposed as a condition of probation pursuant to La.Code Crim.P. art. 895.1 or as part of Defendant's principal sentence pursuant to La.Code Crim.P. art. 883.2.

For the reasons discussed above, Defendant's sentences are vacated and the case remanded for the imposition of determinate sentences with the trial court instructed that it must specify to which count(s) any terms of probation, fines, court costs, community service, and restitution applies and whether they are imposed as part of Defendant's principal sentences or as conditions of probation. *See* La.Code Crim.P. arts. 883.2, 895.1; La.R.S. 14:134.

Finally, the trial court failed to specify to whom restitution was to be paid. In *State v. Schwehm*, 97-1544, p. 16 (La.App. 1 Cir. 5/15/98), 713 So.2d 697, 707-08, *writ granted*, 98-1599 (La. 11/13/98), 728 So.2d 872, *rev'd in part*, 98-1599 (La. 3/19/99), 729 So.2d 548, *writ denied,* 98-1942 (La. 11/13/98), 730 So.2d 933, the court stated:

> In imposing this condition, the trial court stated that defendant was to "make full restitution to all of the affected victims in this case." The court did not specify the victims or the amount of restitution to be paid to them. When a trial court orders restitution without stating the specific amount of the restitution to be paid, the sentence is defective. *See* LSA–C.Cr.P. art. 895.1A; *State v. Wilson,* 613 So.2d 234, 240 (La.App. 1st Cir. 1992), *writ denied,* 93-0533 (La.3/25/94); 635 So.2d 238. Accordingly, although we affirm the sentence, we vacate the condition of restitution and remand this matter to the trial court for a determination of the specific amount of restitution to be paid by defendant to each victim. *See State v. Wilson,* 613 So.2d at 240.

The trial court is instructed that if restitution is imposed, it must specify to whom restitution is to be paid.

*Malfeasance in office*

Malfeasance in office is proscribed and defined by La.R.S. 14:134, which reads, in pertinent part:

> A. Malfeasance in office is committed when any public officer or public employee shall:

7

(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or

(2) Intentionally perform any such duty in an unlawful manner; or

(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.

In the context of this matter, two other statutes are relevant. Louisiana Revised Statutes 42:1461(A) states:

> Officials, whether elected or appointed and whether compensated or not, and employees of any "public entity" . . . assume a personal obligation not to misappropriate, misapply, convert, misuse, or otherwise wrongfully take any funds, property, or other thing of value belonging to or under the custody or control of the public entity in which they hold office or are employed.

Louisiana Revised Statutes 18:1465(A) states:

> No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot.

We must also be aware that "mere inadvertence or negligence, or even criminal negligence, will not support a violation of [La.R.S. 14:134] because the statute specifies the act or failure to act must be intentional." *State v. Petitto*, 10-581, p. 13 (La. 3/15/11), 59 So.3d 1245, 1254.

Defendant challenges that the State proved beyond a reasonable doubt that he intentionally spent funds of the Marshal's office that inured to his personal benefit because he relied upon the advice of his attorney. He also challenges the trial court's refusal to charge the jury with a special instruction that addressed the issue of advice of counsel as it relates to the formation of criminal intent. In accordance with *State v. Hearold*, 603 So.2d 731 (La.1992), we will address the sufficiency of the evidence first.

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442, 443.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than ensuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but, rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.' " *McDaniel v. Brown,* 558 U.S. [120], [134], 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence

9

presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378.

*Count 5*

Defendant was charged with malfeasance for paying attorney Charles Middleton to prepare a motion to unseal the records in Mark Garber's divorce proceedings. Mr. Middleton was co-counsel with Mr. Kevin Stockstill in *The Independence Weekly*'s public records suit. He submitted an invoice to Mr. Stockstill that included references to a motion prepared for a "Mr. Redmond."

Jason Redmond is a political consultant and the former Executive Director of Watch Dog PAC, which supported Mr. Garber's opponent for sheriff. Mr. Redmond testified that he was approached by Mr. Middleton about unsealing the divorce proceedings but expressed doubts about his standing to bring such an action. Mr. Middleton later emailed him to say that another person had filed the motion.

In order to satisfy *The Independent Weekly*'s public records request, Mr. Stockstill "needed to know from Mr. Middleton" what the "Redmond motion" was in order to decide whether it was privileged correspondence or a public record. Defendant prepared a letter to Mr. Middleton dated June 2, 2016, asking him to provide the motion referenced on the November billing so that he could adequately respond to the public records request, which asked specifically about the November 16 and 17, 2015 billing entries. The letter asked Mr. Middleton to reimburse Defendant's office if preparation of the motion was erroneously billed because it

10

was "not in connection with the ongoing public records request or was billed in error[.]"

Mr. Middleton responded the same day, citing billing entries for November 10, 12, 16, and 17, 2015. His letter indicated that he enclosed a money order for $460, representing his "time allotted to the 'Redmond' matter[.]" His November bill indicated that his hourly rate was $200; thus, he reimbursed the Marshal's office for 2.3 hours of work. Mr. Stockstill testified that he would not have used a money order to refund a fee in his law office because he "want[ed] to show the expense." Mr. Stockstill asked Defendant about what the Redmond motion was and what it concerned, and Defendant said he did not know.

The Marshal's office administrator, Julie Albarado, opened all bills, which were held until the tenth of each month. Captain Charles Clause would look the bills over on the tenth and approve or decline them. Approved bills were then returned to Ms. Albarado, who would enter them into the computer system and cut the checks.

After Mr. Middleton's bill was submitted, Captain Clause reviewed it. Bills from attorneys were not common, so he approached Defendant about the bill. According to Captain Clause, Defendant did not examine the bill but told him to pay it.

Defendant argues the evidence shows he told Captain Clause to pay a routine bill from the Marshal's attorney that may or may not have been shown to Defendant. He contends that the evidence is insufficient to support his conviction on this count of malfeasance because it fails to demonstrate intent.

The evidence, however, shows that Defendant was well aware of Mr. Middleton's efforts regarding the motion and was also involved in its creation. Defendant told Mr. Redmond that Mr. Middleton would contact him about a particular matter, which turned out to be the unsealing of Mr. Garber's divorce

records. Mr. Middleton discussed no other actual or potential motion with Mr. Redmond. Further, when his attorney, Mr. Stockstill, asked Defendant about the Redmond motion, Defendant claimed that he did not know. The jury could have reasonably concluded that the "motion" mentioned in Mr. Middleton's November 2015 bill was indeed the proposed motion to unseal the Garber records.

The bill shows that Defendant and Mr. Middleton were discussing and planning the motion on November 10, 2015, the same date Mr. Middleton drafted a proposed motion and emailed Mr. Redmond about unsealing Garber divorce records, including a video purportedly contradicting Mr. Garber's "Family Values" position. The billing entries for November 10, 12, 16, and 17, 2015, all pertained to that motion because Mr. Middleton referred to all of them when he purportedly determined the amount of legal services to be refunded to the Marshal's office by money order. Time entries for those dates all show Mr. Middleton was consulting with Defendant throughout the work involving that motion. According to Mr. Middleton, he drafted the proposed motion; engaged in multiple emails with Mr. Redmond, one of which contained a lengthy explanation of the purpose of the proposed motion; engaged in multiple conferences with Defendant; revised the motion; and performed legal research related to it in only 2.3 hours of work. Evidence and testimony establish Defendant's involvement with the motion. The time entry for November 17, 2015, alone was 2.5 hours. Although that entry included some unknown time for "Indy filing at 15th JDC," the bulk of the time was related to revision of and research for the motion and a conference with Defendant regarding it. The jury could have reasonably found the charges incurred by the Marshal's office related to the motion exceeded the $460 reimbursed by Mr. Middleton. This work was intended to convince voters to vote for Mr. Garber's opponent in violation of La.R.S. 42:1461(A) and 18:1465(A). By violating these

statutes, Defendant committed malfeasance in office when he intentionally performed the duties of his office in an unlawful manner in violation of La.R.S. 14:134. As it relates to Count 5, Defendant's assignment of error lacks merit.

*Count 6*

The jury convicted Defendant of malfeasance in office for paying the fees of attorney Jonathan Jarrett from the Marshal's office funds. Mr. Jarrett represented several of the Marshal's office employees during depositions taken by the District Attorney during its investigation of Defendant. Because none of these employees were targets of the investigation, they did not require legal representation; thus, this expenditure was an inappropriate use of public funds.

Mr. Stockstill opined that he could not represent the employees of the Marshal's office because that would represent a conflict of interest. He felt "possibly anyone who participated in that press conference potentially could have been exposed and [the District Attorney] could have potentially prosecuted them." When the District Attorney issued subpoenas to Defendant's employees, it started "to look like there's a criminal investigation that's about to happen." Thus, Mr. Stockstill believed "they would need somebody to give them advice[,]" and he recommended Mr. Jarrett to represent the employees.

Mr. Stockstill testified that Mr. Jarrett's job was to meet with the employees and "figure out . . . whether or not they had exposure . . . ." Once the depositions were complete, Mr. Stockstill wanted to know if a criminal investigation targeting Defendant was taking place, and he contacted Mr. Jarrett. Mr. Stockstill did not know if Defendant made the decision to hire Mr. Jarrett or if "the individual clients met with Mr. Jarrett and then made a decision and then [Defendant] would have agreed to pay their attorney fees . . . But, ultimately, [Defendant] agreed to pay that

attorney fee." In any event, Mr. Stockstill recommended Mr. Jarrett as the attorney to represent the employees.

Mr. Jarrett's invoice was either mailed or hand delivered to Mr. Stockstill. Whenever Mr. Stockstill received it, he forwarded it to Defendant and asked him to pay it. The letter Mr. Stockstill sent to Defendant with the invoice included the case caption, "*The Independent Weekly vs. Brian Pope, City Marshal*." However, the subpoenas were issued to the employees as part of a criminal investigation, not as part of the civil action to which the caption referred.

Defendant argues that he was erroneously convicted on Count 6 because he acted on advice of his counsel, Mr. Stockstill, when he paid Mr. Jarrett's bill and did not have the requisite criminal intent for malfeasance. He contends that Mr. Stockstill contacted Mr. Jarrett, asked Mr. Jarrett to represent the employees, received Mr. Jarrett's bill, and instructed Defendant to pay it. "'[S]pecific intent . . . might be negated by, *e.g.,* proof that defendant relied in good faith on advice of counsel. See *United States v. Eisenstein,* 731 F.2d 1540, 1543–1544 (CA11 1984)." *Ratzlaf v. United States*, 510 U.S. 135, 142, 114 S.Ct. 655, 660 n. 10 (1994).

The State contends Mr. Jarrett accompanied the employees to their depositions even though he and the employees knew they were only witnesses and not targets of an investigation. Defendant used funds of the Marshal's office to pay Mr. Jarrett's bill even though the employees, not the office, were Mr. Jarrett's clients, and Mr. Stockstill, not Defendant, had retained Mr. Jarrett's services. We conclude that any reasonable juror could have concluded that the purpose of the retainer of Mr. Jarrett did not serve the purpose of the Marshal's office because it was established before the depositions began that the employees were not targeted by the depositions. This assignment of error lacks merit relative to Count 6.

<u>*Count 7*</u>

Attorney Katherine Guillot was retained by Mr. Stockstill to draft an application for supervisory writs addressing the contempt ruling in *The Weekly Independent*'s public records suit. Her invoice was mailed to Defendant's home address. Defendant thereafter approved payment of the invoice from Marshall's office funds.

In *The Independent Weekly*'s case, Defendant was sentenced to jail time and possibly a fine. In the writ application, Ms. Guillot testified, "[o]ne of the issues had to do with whether or not the finding of contempt constituted double jeopardy because the issue had been raised already in a hearing in January." Ms. Guillot thought the other issue was whether Defendant "was appropriately found guilty of contempt of court." This court's ruling on the writ application stated:

> **<u>WRIT DENIED</u>:** Considered in a light most favorable to the Plaintiff in this case, the testimony and documentary evidence established beyond a reasonable doubt that Defendant intentionally and purposefully failed to deliver the requested public records despite the trial court's December 14, 2015, order to do so. Nor did Defendant establish a justifiable excuse as to why the documents could not be provided. Furthermore, the monetary fine to be paid to Plaintiff, imposed on Defendant at the January 4, 2016, hearing, was civil in nature and, thus, did not invoke the prohibition against double jeopardy. *Hudson v. U.S.*, 522 U.S. 193, 118 S.Ct. 488 (1997). Accordingly, there was no error in the trial court's ruling.

*Independent Weekly, LLC v. Pope*, 16-327 (La.App. 3 Cir. 6/21/16) (unpublished opinion).

Ms. Guillot knew Mr. Stockstill was working as Defendant's criminal attorney. For privacy reasons and because she did not know to whom to direct the bill, she sent her invoice to Defendant's home. She encountered Mr. Stockstill at court one day and informed him that her bill had not been paid. Mr. Stockstill walked to the Marshal's office with her, and Ms. Guillot was handed a check. The invoice was approved by Defendant on July 13, 2016.

In the context of this matter, the writ application was not necessitated by any official duty of Defendant as Marshal for the City of Lafayette; rather, it arose from his attempts to influence the Lafayette Parish Sheriff's election. We find that any reasonable juror could find that this was a misappropriation of Marshal's office funds. This assignment of error lacks merit with regard to Count 7 as well.

Defendant contends that the trial court abused its discretion when it failed to give a jury instruction concerning "advice of counsel." The proposed instruction stated:

> You have heard evidence that [Defendant] relied on the advice of his attorneys regarding certain actions for which he is now being criminally charged. I remind you that the Government must prove beyond a reasonable doubt that the Defendant . . . intentionally violated the law. I instruct you that reliance on the advice of counsel excuses an act which may turn out to be criminal, if this reliance negates the legal requirement that the Defendant acted knowingly and willfully in breaking the law.

The charge conference took place off the record. Defendant placed his objections to the jury charge on the record, but it contains no discussion or input from the trial court as to why this special instruction was not included.

> A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La.C.Cr.P. art. 807; *see also State v. Johnson,* 438 So.2d 1091, 1097 (La.1983); *State v. Lane,* 414 So.2d 1223, 1228 (La.1982). The charge, however, must be supported by the evidence. *State v. Teleford,* 384 So.2d 347, 350 (La.1980). This is a corollary of the trial judge's basic obligation to charge the jury as to the law applicable to the case, under which he is required to cover every phase of the case supported by the evidence whether or not accepted by him as true. La.C.Cr.P. art. 802; *State v. Simmons,* 422 So.2d 138, 141 (La.1982); *State v. Miller,* 338 So.2d 678, 679 (La.1976). Moreover, failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to substantial rights of the accused, or a substantial violation of a constitutional or statutory right. La.C.Cr.P. art. 921; *State v. Marse,* 365 So.2d 1319, 1324 (La.1978).

*State v. Perkins*, 13-1917, p. 2 (La. 9/3/14), 149 So.3d 206, 207-08.

16

Defendant elicited testimony at trial that his attorney told him to pay the legal bills of Mr. Jarrett and Ms. Guillot. He called the jury's attention to that defense and his reliance on his attorney's advice during his closing argument. Defendant does not show how the omission of the requested instruction resulted in a miscarriage of justice, prejudice to his substantial rights, or substantial violation of his constitutional or statutory rights, or how including it would have had any greater effect on the jury. This assignment of error lacks merit.

The State contends that the district court erred in granting Defendant's motion for acquittal and reversing the jury's verdict of guilty of perjury, Count 1. At trial, the jury found Defendant guilty of lying under oath in his December 28, 2015 deposition in the public records case "by denying that he had authorized the distribution of email via third party mass distribution service, when in fact he had authorized such distribution[,]" according to the State's bill of particulars.

The emails in question were distributed by a service known as Campaigner. They advised the recipients of the press conference held by Defendant regarding Mr. Garber's candidacy for sheriff. Defendant denied knowing whether Campaigner was a third-party vendor for the email. He denied knowing how the email was distributed using his email address.

Mr. Joe Castille acted as political consultant for Mr. Garber's opponent. He testified that Defendant advised him he wished to hold a press conference about the interview, and he asked Mr. Castille to write a press release. Mr. Castille explained to Defendant that he was going to send out the advisory, and he needed Defendant's permission to send it. Defendant authorized him to send the press release using Defendant's government email address and Campaigner, an email software he used "for press releases and updates for supporters, all that sort of thing."

17

The trial court granted Defendant's motion for acquittal on June 19, 2019, and reversed Defendant's conviction for perjury, Count 1, after reviewing the trial transcript "several times regarding the testimony of Mr. Castille[.]" The trial court stated:

> I found specifically Mr. Castille's testimony in regards to the third party vendor, the Campaigner, where he said that he didn't explain it to [Defendant]. He indicated several times that he had talked about email software and then come [sic] back on cross and he was extremely specific in regards to some testimony. And then back on direct exam where his testimony was very vague. He didn't explain some of the things to [Defendant] or he couldn't be sure of what he explained to [Defendant].

"A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La.Code Crim.P. art. 821(B). The trial court noted "the jury was not unreasonable," and further described it as "a fantastic jury that were [sic] extremely attentive." However, he also did not believe Defendant "had an understanding of what the third party vendor or the clicking button even meant in this regard." Accordingly, the trial judge granted Defendant's motion for acquittal on Count 1, the perjury conviction. The testimony and evidence at trial discussed above supports the trial court's conclusion.

"Perjury is the intentional making of a false written or oral statement" under oath that relates to matter which is "material to the issue or question in controversy." La.R.S. 14:123(A), (B). Whether Defendant knew Campaigner was a third-party vendor for the mass distribution of emails, or even if he knew and lied about it, is not a material matter in the public records action. Whether Campaigner was a third-party vendor or some other type of software program does not change any of the evidence in this case or in the public records action. Evidence in the public records action established that emails containing the press advisory and the press conference

were sent. Defendant never denied that he notified media representatives of the press conference, and he never denied the existence of the press conference, what was said in it, or Mr. Castille's involvement in it. The manner by which the notification was sent was immaterial. Accordingly, the trial court did not err when it granted Defendant's motion for a verdict of acquittal on Count 1, perjury.

## DECREE

The sentences imposed in the above matter are vacated, and the matter is remanded to the trial court with instructions to specify on which count or counts it imposed the probation, community service, fine, court costs, and restitution; to specify whether these were imposed as part of Defendant's principal sentence or as conditions of probation; and to specify to whom restitution is to be paid. Defendants convictions are affirmed. The trial court's grant of Defendant's motion for acquittal is affirmed.

**SENTENCES VACATED. CONVICTIONS AFFIRMED. GRANT OF MOTION FOR ACQUITTAL AFFIRMED. REMANDED WITH INSTRUCTIONS.**